IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRUCE A. IVIE,                              )
                                            )
                    Plaintiff,              )        Civil Case No. 08-6223-KI
                                            )
        vs.                                 )        OPINION AND ORDER
                                            )
MICHAEL J. ASTRUE, Commissioner,            )
Social Security Administration,             )
                                            )
                    Defendant.              )
_____       )

        John E. Haapala, Jr.
        59 E. 11th Avenue, Suite 125
        Eugene, Oregon  97401

                Attorney for Plaintiff

        Kent S. Robinson
        Acting United States Attorney
        District of Oregon
        Adrian L. Brown
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Bruce Ivie brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Ivie filed an application for SSI on August 23, 2004.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Ivie, represented by an advocate, appeared and testified before an Administrative Law Judge ("ALJ") on September 6, 2006.

On September 29, 2006, the ALJ issued a decision finding that Ivie was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on May 20, 2008.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

Page 2 - OPINION AND ORDER

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert.

denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner

determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is

engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds

to step two and determines whether the claimant has a medically severe impairment or

combination of impairments.  A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and

416.920(c).  If the claimant does not have a severe impairment or combination of impairments,

disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ determined that Ivie suffered from depression, personality disorder with antisocial and schizoid features, a history of methamphetamine, cannabis and alcohol abuse, in remission since February 2004, rule out ADHD and cognitive disorder. The ALJ did not find that any of these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of Part 404 of the Social Security Regulations.

The ALJ concluded that Ivie had no exertional limitations, but did have mental impairments that limited him to work requiring no contact with the public, simple instructions, and routine, simple, predictable tasks. The ALJ opined that Ivie had no ability to "independently formulate work plans and goals[.]" Tr. 16.

Relying on the testimony of a vocational expert ("VE"), the ALJ found that someone with Ivie's RFC could work as a hand packager, a small products assembler, and a laundry folder.

## FACTS

Ivie, born in October 1956, alleges disability beginning January 1, 1993, due to attention deficit disorder, depression, learning disability and vision problems. As a child, Ivie had behavioral problems, including smearing feces in school and church five to ten times. He was sexually abused as a pre-teenager. He was arrested when he was twelve for burning a field with an older man. His mother removed him from school due to a conflict with an assistant principal when he was 16 years old.

Ivie has been arrested for trespassing, drunk and disorderly conduct, shoplifting and has been arrested three or four times for burglary.  He has also been arrested for possessing methamphetamine and marijuana.  He has spent a total of about five years in prison.  Ivie earned a GED while in prison.

Ivie is a recovering alcoholic.  He began drinking when he was 14 years old, but he has been sober since about 1991.  He began smoking marijuana at age 12, and has been clean since 2004.  He began snorting methamphetamine when he was 25 years old, and has been clean since 2004.

Ivie had been homeless for three or four years at the time he applied for disability.  At some point, he lived for about one year in an apartment provided by St. Vincent de Paul, but was asked to leave because he could not pay even the reduced rent.[1]  At the time of the hearing, Ivie had been living with and taking care of a man diagnosed with leukemia.  The man's daughter cleaned the house and prepared meals, but Ivie handled the man's pain medication.

Ivie worked for six months to a year as a janitor in a vocational program about ten years before the hearing.  He was fired because he was using methamphetamine.  At the time of the hearing, Ivie spent his time buying items at Value Village and selling them to a friend who put them on eBay.  He reported that he was not allowed in the St. Vincent de Paul and Goodwill stores any longer because he argued with the managers.

---

[1]Ivie's dates are somewhat inconsistent.  In February 2006, he told Dr. Truhn he had been homeless "most of his adult life," but in September 2004 he reported he had been homeless for three or four years.  Tr. 206, 74.  He also told Dr. Truhn he lost his apartment with St. Vincent de Paul, where he had been living for a year, in November 2004.  Tr. 206.  However, he reported being homeless in September 2004, and the records reflect that he was incarcerated in April 2004.  One medical record reflected an eviction in November 2005.  Tr. 258.

Ivie complains of no physical problems, but claims he cannot work because he gets confused and sidetracked easily, and because he has difficulty with his concentration and memory.

Ivie has had drug treatment.  His provider reported that he was alert, had no memory impairment, had no concentration or attention impairment, and demonstrated normal intelligence. Ivie described his lack of self-esteem to his provider.

### DISCUSSION

Ivie challenges the ALJ's rejection of the opinions offered by David R. Truhn, Psy.D. Ivie contends that the ALJ's rejection of Dr. Truhn's opinions affected the listings analysis and the ALJ's formation of Ivie's RFC.

Dr. Truhn evaluated Ivie on two occasions, once on October 25, 2004 and again on February 23, 2006.  His evaluation in 2004 involved extensive testing, including the Wechsler Adult Intelligence Scale, Comprehensive Trailmaking Test, Minnesota Multiphasic Personality Inventory-II, and the Conners Continuous Performance Test-II.  Ivie's Full Scale I.Q. was in the 45th percentile.  He scored in the borderline range on a test of his common sense and problem solving skills, and in the low average range on social interaction.  He had no trouble following simple instructions.  The tests indicated poor concentration and motivation, impulsiveness, self-consciousness, difficulty managing stress, and attention deficit disorder.  Dr. Truhn diagnosed Ivie with Depressive Disorder NOS, rule out Attention Deficit Hyperactivity Disorder, Predominately Inattentive Type, and drug and alcohol dependence in remission on Axis I.  On Axis II, Dr. Truhn diagnosed Personality Disorder NOS with Antisocial and Schizoid features.

He assigned a Global Assessment of Functioning score of 43.[2]  He recommended a medication

evaluation and vocational rehabilitation services.

In 2006, Dr. Truhn again examined Ivie.  Dr. Truhn noted that Ivie showed up about 24

hours late for the appointment, was fidgety and shaky, wore dirty clothing and smelled bad.  He

assigned a GAF of 48.  Dr. Truhn opined:

> Mr. Ivie's prognosis is poor.  His personality disorder has seemingly
> prevented him from participating in any type of long-term in-depth relationship
> and he has been unable to maintain employment in a sheltered workshop in the
> past and has continued to have difficulty with authority figures throughout his life.

Tr. 210.

I.    Listing of Impairments

The listings set out at 20 C.F.R. Part 404, Subpart P, Appendix 1 are "descriptions of

various physical and mental illnesses and abnormalities, most of which are categorized by the

body system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990).  For a claimant to

show that his impairment matches one of those listed, the impairment must meet all of the

specified medical criteria.  Id. at 530.  If a claimant's impairment meets or equals a listed

impairment, he is presumed unable to work and is awarded benefits without a determination

whether he can actually perform prior work or other work.  Id. at 532.  Ivie bears the burden of

proving that he has an impairment that meets or equals the criteria in the listings.  Burch v.

Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

---

[2]A GAF score of 41 to 50 means that an individual has "[a] serious impairment in social,
occupational, or school functioning (e.g. no friends, unable to keep a job)."  Am. Psychiatric
Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV).

For Listings Sections 12.04 (depressive disorder), 12.08 (personality disorder) and 12.09 (addiction disorder), the ALJ must evaluate the four criteria in paragraph B of the listings. These are: activities of daily living; social functioning; concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. A "marked" difficulty in any of these areas means "more than moderate but less than extreme. . . . [It is when] the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00C. In order to meet any of the listings, the claimant must demonstrate a "marked" difficulty in at least two of the four paragraph B criteria.

In November 2004, Dr. Truhn completed a Rating of Mental Impairment Severity worksheet. He concluded that Ivie had "marked" difficulties in maintaining activities of daily living, noting that Ivie had "marginal hygiene, cannot use public transportation." Tr. 164. He opined that Ivie had "marked" difficulties in maintaining social functioning, pointing to Ivie's "social isolation, abuse." Id. He concluded Ivie had "moderate" to "marked" difficulties in maintaining concentration, persistence or pace as demonstrated by his "fluctuating problems as noted on tests." Id. He noted Ivie had "ongoing" episodes of decompensation "by client report." Tr. 165. This worksheet must be read in conjunction with Dr. Truhn's eight page October 2004 report.

The ALJ found that Dr. Truhn did not soundly support his opinion as to Ivie's "marked" difficulties. According to the ALJ, the fact that Ivie had been prohibited from mass transit due to his alcohol use on the bus, and that Ivie had "kicked" a bus, was not evidence of "marked" difficulties. "Being prohibited from riding a bus (prior illegal behavior) should not translate to

'marked' problems with activities of daily living; especially as he has no difficulty taking a bus but had misbehavior that will not be repeated, as he has been abstinent from alcohol for years." Tr. 18. The ALJ also pointed out that Ivie showers, cooks meat, eggs or pasta at his camp, and has gained weight, all of which were inconsistent with a "marked" difficulty in taking care of himself. Furthermore, he showered once a week because "that's my lifestyle." Tr. 18, 206.

As for his social functioning, the ALJ noted Ivie enjoyed going to the movies with friends and family members, he stored his belongings at a friend's house when he was homeless, he recently began taking care of a man with leukemia, and he had his own room in that man's home and kept it clean. These were not "marked" difficulties in social functioning, according to the ALJ.

The ALJ concluded that Ivie's ability to manage his money and food stamps, and engage in entrepreneurial activity like shopping at Value Village and reselling the items to a friend for placement on eBay, undermined Dr. Truhn's conclusion that Ivie had "moderate" to "marked" difficulties in concentration, persistence or pace.

As for periods of decompensation, Dr. Truhn failed to estimate how often Ivie suffered from periods of decompensation, reporting only that Ivie told him decompensation was "ongoing."

Instead, the ALJ accepted, for the most part, the opinion of the nonexamining state agency physicians who concluded Ivie suffered from moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace. They also concluded he had experienced no periods of decompensation. The ALJ disagreed with the state agency physicians

on the issue of restrictions in activities of daily living; they found "moderate" difficulties, but he concluded Ivie's limitations were "mild" because Ivie took care of a man with leukemia.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

I find that the ALJ provided specific and legitimate reasons for finding that Ivie did not suffer "marked" limitations with respect to the first, second and fourth criteria, but that at least one of his reasons for finding only moderate limitations on the third criterion is not a valid reason. Any error with respect to the third criterion is, however, harmless since Ivie must show "marked" impairment in at least two of the four functional categories.

Page 11 - OPINION AND ORDER

With regard to the first criterion, according to the Social Security regulations, "marked" difficulties in activities of daily living mean "serious difficulty performing [activities] without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.1. As the ALJ remarked, Ivie took care of his needs by showering at his mother's house and cooking for himself. There was no evidence he required supervision to do so.

"Marked" limitations in the second criterion–social functioning–would be an inability to "interact independently, appropriately, effectively, and on a sustained basis with other individuals." Examples include "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." Id. at § 12.00C.2. The ALJ pointed to Ivie's having friends and family members with whom he went to the movies and the fact that Ivie lived with and took care of a man with leukemia as inconsistent with "marked" difficulties in social functioning. Ivie described himself as having no problems getting along with people. The ALJ provided specific and legitimate reasons to discount the opinion of Dr. Truhn.

The fourth factor, episodes of decompensation, means "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning" and would be demonstrated by "significant alteration in medication or . . . hospitalizations, placement in a halfway house, or a highly structured and directed household[.]" Id. at § 12.00C.4. To meet this category, a claimant must have "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Id. Dr. Truhn did not support his conclusion that Ivie's decompensation was "ongoing," since he relied only on "claimant's report." This is a valid reason to reject Dr. Truhn's opinion. See Morgan v. Commissioner of Social Security

Administration, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted) (physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.").

With respect to the third criterion, difficulties with concentration, persistence or pace might be "marked" if the person "cannot complete . . . tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00C.3. The ALJ relied on Ivie's entrepreneurial success in reselling items to a friend, and the fact that he makes enough money to afford a bicycle, a cell phone and camp supplies, as inconsistent with "marked" difficulties in concentration, persistence or pace.

I disagree with the ALJ. The fact that Ivie can purchase items at Value Village and sell them to a friend could be consistent with a conclusion that Ivie is unable to work uninterrupted for a full work day; I do not find this to be a significant and legitimate reason to reject Dr. Truhn's conclusions with respect to this criterion.

Nevertheless, the ALJ also considered the fact that Ivie's drug treatment provider found Ivie demonstrated unimpaired concentration and attention. While this is an appropriate factor to consider, the Social Security regulations suggest the ALJ also look to test results, such as the ability to subtract serial sevens or serial threes from 100, the ability to complete tasks within a set time limit, the strength of short-term memory, and the ability to complete simulated work tasks. The ALJ here did not address Dr. Truhn's testing, which showed "slow cognitive processing"

and indicated "70 chances out of 100 that a clinical problem with concentration and attention exists." Tr. 160, 161. The ALJ should have accounted for this evidence. The ALJ could have done so, for example, by pointing to potentially conflicting test results showing Ivie has an average IQ, average mathematical skills, average short-term memory, and the ability to follow simple directions. Indeed, Dr. Truhn himself checked both the boxes "moderate" and "marked."

In sum, the ALJ failed to provide specific and legitimate reasons for choosing to accept the non-examining state agency opinions over Dr. Truhn's analysis with respect to one of the four categories in the paragraph B criteria. Ivie, however, must show "marked" limitations in two of the four categories in order to meet Listings Sections 12.04, 12.08 and 12.09, and he failed to meet his burden. Accordingly, the ALJ's error is harmless.

II.    Residual Functional Capacity

The ALJ concluded that Ivie had no exertional limitations, but did have mental impairments that limited him to work requiring no contact with the public, simple instructions, and routine, simple, predictable tasks. The ALJ opined that Ivie had no ability to "independently formulate work plans and goals[.]" Tr. 16.

Ivie argues the ALJ should have considered his "marked" limitations in concentration, persistence and pace and his inability to perform work even in a sheltered work environment.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The ALJ accounted for any limitations in concentration, persistence or pace by including in the RFC the need for routine, simple and predictable tasks.  Furthermore, the ALJ's RFC accounted for Dr. Truhn's conclusion that Ivie could follow simple instructions and demonstrated "slowed cognitive functioning," as well as the state agency physician's conclusion that Ivie had a "marked" impairment in ability to understand and remember, carry out detailed instructions, and interact with the general public.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (RFC of "simple, routine, repetitive" work is consistent with doctor's opinion that claimant can carry out "very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision.").

Ivie's assertion that he could not even perform work in a sheltered setting is not supported by the record.  Ivie was fired from the sheltered job because he was using methamphetamine, not due to any mental impairment.  The limitations set out by the ALJ are supported by substantial evidence in the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____2nd_____ day of September, 2009.


____/s/ Garr M. King_____
Garr M. King
United States District Judge


Page 15 - OPINION AND ORDER